## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AFRICAN RENEWABLE ENERGY, INC.**<br>312 N. Sibyl Road<br>Saint David, Arizona 85630<br><br>Plaintiff,<br><br>v.<br><br>**U.S. CITIZENSHIP AND IMMIGRATION SERVICES**,<br>20 Massachusetts Ave, NW, Room 4210<br>Washington, D.C. 20529<br><br>**TRACY RENAUD, INTERIM DIRECTOR**,<br>U.S. Citizenship and Immigration Services<br>20 Massachusetts Ave, NW, Room 4210<br>Washington, D.C. 20529<br><br>**LAURA ZUCHOWSKI, DIRECTOR OF VERMONT SERVICE CENTER**,<br>U.S. Citizenship and Immigration Services<br>75 Lower Weldon Street<br>St. Albans, VT 05479<br><br>Defendants. | Civil No.: |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COMES NOW, African Renewable Energy, Inc. ("Plaintiff") a distributor of Solar Equipment to Africa based in Saint David, Arizona who filed a Form-129 Petition for a Nonimmigrant Worker ("I-129"), on behalf of Rajat Gupta ("Gupta" or "Beneficiary"), the beneficiary. On October 28, 2020, Defendants United States Citizenship and Immigration Services ("USCIS"), Laura Zuchowski ("Zuchowski"), Director of Vermont Service Center of U.S. Citizenship and Immigration Services, and Tracy Renaud ("Renaud"), Interim Director of U.S. Citizenship and Immigration Services (collectively, the "Defendants"), improperly denied

Plaintiff's I-129. Plaintiff files this civil action seeking review of Defendants' denial of Plaintiff's I-129 and respectfully requests that this Court reverse the arbitrary and capricious denial of Plaintiff's I-129.

## JURISDICTION

1.      This case arises under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). This Court has authority to grant relief under the APA and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

2.      Pursuant to 5 U.S.C. § 702, the USCIS has waived sovereign immunity over any claim that an agency, or an officer or employee of an agency, acted, or failed to act, in an official capacity and for which a person has suffered a legal wrong.

3.      Plaintiff may seek judicial review upon denial of their visa petition without any further administrative appeal. See *EG Enterprises, Inc. v. Dept. of Homeland Sec.*, 467 F. Supp. 2d 728, 733 (E.D. Mich. 2006) (exercising jurisdiction upon finding plaintiff was not required to appeal the denial of its H-1B visa petition to the Administrative Appeals Office prior to filing suit; noting USCIS concurrence); *Young v. Reno*, 114 F.3d 879 (9th Cir. 1997) (Petitioner was not required to appeal her visa revocation to the Board of Immigration Appeals prior to seeking review in district court).

## VENUE

4.      Venue in this district is proper under 28 U.S.C. § 1391(e)(1) because this is a civil action in which the Defendants are employees or officers of the United States, acting in their

official capacity, and an agency of the United States, and in which all are located in the District of Columbia; and there is no real property involved in this action.

## PARTIES

5.      Plaintiff African Renewable Energy, Inc. is a distributor of Solar Equipment to Africa based in Saint David, Arizona.

6.      Defendant USCIS is the agency within the Department of Homeland Security ("DHS"), which is responsible for adjudicating immigration benefits, including H-1B petitions. USCIS is the agency that denied Plaintiff's H-1B petition, which is the subject of this Complaint.

7.      Defendant Tracy Renaud is sued in her official capacity as, at the time this Complaint is filed, the Senior Official Performing the Duties of the Director. In this position Ms. Renaud is responsible for overseeing the adjudication of immigration benefits and establishing and implementing governing policies. Ms. Renaud also has the responsibility of adjudicating H-1B petitions, such as the one that is the subject of this Complaint.

8.      Defendant Laura Zuchowski is sued in her official capacity as Director of U.S. Citizenship and Immigration Services Vermont Service Center. Ms. Zuchowski is the officer who denied Plaintiff's H-1B petition.

## LEGAL BACKGROUND

9.      Pursuant to the INA, a United States employer may sponsor a qualified foreign national to temporarily enter the United States to "perform services . . . in a specialty occupation." INA §§ 101(a)(15)(H)(i)(b), 214(i); 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1184(c).

10.     Congress has defined "specialty occupation" as an occupation that requires: (a) theoretical and practical application of a body of highly specialized knowledge, and (b) the attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States. *See* 8 U.S.C. §1184(i).

11.     In addition to establishing that the proffered position is a "specialty occupation" as defined above, a petitioner must also satisfy *one* of the four regulatory tests set forth in 8 CFR, section 214.2(h)(4)(iii)(A) [emphasis added]. At the time USCIS denied Plaintiff's I-129, the four regulatory tests were as follows:

(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into a particular position;

(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties is so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

*See* 8 CFR, section 214.2(h)(4)(iii)(A).

12.     In a proceeding, such as the one that makes the basis of this Complaint, a petitioner bears the burden of establishing eligibility for the benefits sought. See *Matter of Brantigan,* 11 I&N Dec. 493 (B.I.A. 1966).

13.     The petitioner must demonstrate, by a preponderance of the evidence that the position it seeks to fill is a "specialty occupation" as defined by 8 U.S.C. §1184(i) and 8 CFR, section 214.2(h)(4)(iii)(A).

14.     Here, Defendants improperly denied Plaintiff's I-129 holding that Plaintiff failed satisfy any of the four requirements set forth above and outlined in 8 CFR, section 214.2(h)(4)(iii)(A).

15.     A final agency action, such as the denial in the present matter, will only be set aside if it was "arbitrary, capricious, an abuse of discretion and not in accordance with the law." *See* 5 U.S. Code § 706(2)(A).

16.     Plaintiff requests this Court hold Defendants' denial of Plaintiff's I-129 unlawful because the denial was arbitrary and capricious. *See* 5 U.S. Code § 706(2)(A).

## FACTUAL BACKGROUND

17.     On or about June 17, 2020, Plaintiff filed a Form I-129, Petition for a Nonimmigrant Worker, to classify beneficiary, Gupta, a lawful F-1 nonimmigrant, as a temporary worker in H-1B status for the specialty occupation of Operations Research Analyst. A true and correct copy of the Form I-129 Petition is attached hereto as Exhibit "A" and is incorporated herein by reference.

18.     Defendant USCIS issued a receipt notice for Petitioner's Form I-129 on July 1, 2020. A true and correct copy of the receipt noticed is attached hereto as Exhibit "B" and is incorporated herein by reference.

19.     Beneficiary received a Bachelor of Technology in Chemical Engineering from Gautam Buddh Technical University. In 2019, beneficiary received a Master of Science degree in Agricultural and Resource Economics, with an emphasis in Applied Econometrics and Data Analytics Emphasis from The University of Arizona, Tucson. *See* Exhibit "A".

20.     In addition to beneficiary's extensive educational background in agricultural economics, from July 1, 2019 through June 30, 2020 Beneficiary gained employment with Plaintiff, as an Operations Research Analyst, through the Optional Practical Training ("OPT") program available for students on a F-1 visa. Exhibit "A".

21.     Plaintiff sought to employ beneficiary for a three-year term position as an Operations Research Analyst, a specialty occupation of Operations Research Analysts. Plaintiff agreed to pay beneficiary an annual salary of $75,000.00. Exhibit "A".

22.     In support of its I-129 petition, Plaintiff supplied the following (non-exhaustive list) of relevant documentation: (1) Labor Condition Application ("LCA") (I-200-20156-627314) for the position of Operations Research Analyst, a specialty occupation of Operations Research Analysts, which was certified by the Department of Labor ("DOL") for the period of October 1, 2020 through September 30, 2023; (2) evidence of Plaintiff's current valid F-1 status; (2) position description letter, detailing the job eligibility and duties; (3) job duties and mapping to course work, which detailed the job duties, requirements in relation to each job duty, and Plaintiff's qualifications; and (4) company documentation, including: a company brochure, depot inventory procedures, office pictures and client success stories. *See* Exhibit "A".

23.     On September 11, 2020, Defendant USCIS issued a Request for Evidence ("RFE"), alleging that Plaintiff failed to submit sufficient evidence to show that the position offered to beneficiary qualified as a "specialty occupation" as defined by both 8 U.S.C. §1184(i) and 8 CFR, section 214.2(h)(4)(iii)(A). A true and correct copy of the RFE is attached hereto as Exhibit "C" and is incorporated herein by reference.

24.     In the RFE, Defendant USCIS stated the Plaintiff failed to establish that the proffered position of Operations Research Analyst qualified as a "specialty occupation" as defined by both 8 U.S.C. §1184(i) and 8 CFR, section 214.2(h)(4)(iii)(A) because Plaintiff failed to submit sufficient evidence "to establish how each field is directly related to the duties and responsibilities of the particular position, and therefore, that the position is a specialty occupation." *See* Exhibit "C". Defendant USCIS failed to provide any further explanation as to why Plaintiff did not satisfy

any of the four requirements under 8 CFR, section 214.2(h)(4)(iii)(A). In fact, and despite the laundry list of documentation Plaintiff submitted with its I-129 petition as outlined above, Defendant USCIS falsely stated that Plaintiff failed to submit ***any*** evidence to support each of the four criteria. *See* Exhibit "C."

25.     The RFE offered Plaintiff the opportunity to submit additional evidence showing that the position of Operations Research Analyst was a "specialty occupation" pursuant to 8 U.S.C. §1184(i) and the regulations outlined in 8 CFR, section 214.2(h)(4)(iii)(A).

26.     Plaintiff timely responded to the RFE. In the response, Plaintiff included significant supplemental evidence showing that the position of Operations Research Analyst qualifies as a "specialty occupation." In addition to the supplemental evidence, Plaintiff included evidence already in the record, since Defendant USCIS did not take notice of and/or completely disregarded the initial evidence Plaintiff submitted with its I-129 petition. The supplemental evidence included, but is not limited to, the following: an excerpt from the Department of Labor's Occupational Outlook Handbook ("OOH"); a position description, which included not only a description of the job duties, but the percentages of time for each duty and the education Plaintiff completed related to each duty listed; professional evaluations; beneficiary's business profile; and the educational credentials of an employee working as an Operations Research Analyst. The initial evidence Plaintiff submitted with the Form I-129 and the supplemental evidence submitted in response to the RFE was more than sufficient to establish that the proffered position of Operations Research Analyst is a "specialty occupation" as defined by 8 U.S.C. §1184(i) and under all four regulatory tests set forth in 8 CFR, section 214.2(h)(4)(iii)(A). A true and correct copy of the Response to RFE is attached hereto as Exhibit "D" and is incorporated herein by reference.

27.    On October 28, 2021, Defendant USCIS issued a decision denying the Plaintiff's I-129 (the "Denial"). A true and correct copy of the Denial is attached hereto as Exhibit "E" and is incorporated herein by reference.

28.    Defendant USCIS unreasonably denied Plaintiff's petition holding that Plaintiff failed satisfy any of the four requirements set forth in 8 CFR, section 214.2(h)(4)(iii)(A). However, Plaintiff provided substantial evidence that demonstrated the relevant position satisfied not only one of the requirements, but all four of the requirements set forth in 8 CFR, § 214.2(h)(4)(iii)(A). Defendant USCIS not only failed to properly apply the regulatory tests outlined in 8 CFR, § 214.2(h)(4)(iii)(A), but also failed to provide any logical and/or reasonable explanation as to why Plaintiff failed to satisfy each requirement. Rather, Defendant USCIS provided Plaintiff with a plethora of overbroad explanations, loaded with blanket statements, that provided no reasoning in basis of law or fact as to what Plaintiff could have provided to satisfy the relevant requirements or why the substantial evidence Plaintiff did proffer was not sufficient.

## STATEMENT OF CLAIMS

### Count One: APA–the Denial is Arbitrary and Capricious

29.    Plaintiff re-alleges and incorporates by reference herein all of the allegations set forth above.

30.    The APA empowers this Court to set aside a final agency action where, as in the present matter, the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. §706(2)(A). Under this standard, the court may reverse an agency decision if:

> The agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983.).

31.        USCIS' decision must reflect that it "considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action." *Noroozi v. Napolitano*, No. 14 cv 2012 (PAE), 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012), citing *J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir. 2000).

32.        Defendants wholly failed to discuss or otherwise demonstrate that they considered the abundance of evidence submitted by Plaintiff. In fact, in the RFE sent by Defendants to Plaintiff, it is abundantly clear that Defendants completely failed to consider *any* of the initial evidence submitted with Plaintiff's I-129 petition. Further, Defendants failed to provide sufficient justification for their denial of Plaintiff's petition, instead Defendants provided overbroad explanations that offered little, if any, insight on to how Defendants came to the conclusions they did.

33.        As described herein, and despite the fact that a qualifying position need only satisfy one of the four criteria outlined in 8 CFR § 214.2(h)(4)(iii)(A), Plaintiff satisfied all four of the requisite criteria. Defendants' denial is indisputably arbitrary and capricious, as the denial runs counter to the evidence in the record and must be reversed.

**A.  *Degree is Normally Minimum Requirement***

34.        In order to satisfy the first criterion, outlined in 8 CFR § 214.2(h)(4)(iii)(A)(1), a petitioner must demonstrate that "a baccalaureate or higher degree, or its equivalent, in a specific specialty, is normally the requirement for entry into the particular position." Defendants concluded that Plaintiff failed to meet this criterion.

35.        In support of the first criterion, Plaintiff submitted a certified LCA, which listed an Occupation Title of Operations Research Analyst. Plaintiff referenced information

regarding the training and educational requirements for Operations Research Analyst positions it found in the OOH.

36.        Defendants claimed that the information Plaintiff pulled from OOH "does not indicate that position of an Operations Research Analyst "normally" requires a minimum of a bachelor's degree in a specific specialty." *See* <u>Exhibit "E"</u>. This conclusion is unfounded.

37.        Defendants based their conclusion off one statement pulled from the OOH: though the OOH states a bachelor's degree is *typically* required for the relevant position, since few schools offer a bachelor's or advanced degree in operations research, a range of educational credentials may qualify an individual to perform the duties of an Operations Research Analyst. Defendants concluded that since a ***range*** of education credentials may qualify an individual to perform the duties of an Operations Research Analyst, rather than a bachelor's degree in a specific field that the position is not a specialty occupation. However, and as Plaintiff pointed out in its RFE response and as stated in the OOH, the alternative degrees of engineering, computer science, analytics and mathematics all require the same classes that an operations research degree requires. So, while the degree may differ, the ***specialized knowledge*** comes from the classes taken, not just the degree conferred. This is further demonstrated through the OOH, which identifies the coursework that is essential for this occupation – statistics, computer science, economics- thus demonstrating that a "body of highly specialized knowledge" is necessary to perform the job of an operations research analyst.

38.        Further, the OOH is clear that a minimum of a bachelor's degree is required. In fact, the OOH states that "some employers may prefer to hire applicants with a master's degree." *See* <u>Exhibit "E"</u>. This indicates that not only is a bachelor's degree the ***minimum*** educational

requirement to be an Operations Research Analyst, but it demonstrates that a bachelor's degree is "normally" the minimum degree requirement for the occupation.

39.     Lastly, it important to note that since the issuance of Plaintiff's denial letter, the four-criterion set forth in 8 CFR § 214.2(h)(4)(iii)(A) have been revised significantly to better align with the statutory definition of "specialty occupation" found in 8 U.S.C. §1184(i). The revisions were effective as of December 7, 2020 and apply to all H-1B petitions filed after that date. Among the many revisions made, the relevant change herein concerns the first regulatory test, which now reads as "a U.S. baccalaureate or higher degree in a directly related to specific specialty, or its equivalent, is the minimum requirement for entry into the particular occupation in which the beneficiary will be employed." The key factor in the newly revised criterion is the removal of the word "normally."

40.     As stated above, the court may reverse an agency decision if, "the agency relied on factors Congress did not intend to consider…" The criteria set forth in the first regulatory test was revised because it did not properly align with the statute enacted by Congress. The decision to revise the first regulatory test to conform with the intentions of Congress is indicative that DHS recognized that the criteria required to satisfy the first regulatory test used in the present matter, included factors Congress did not intend to consider. Thus, despite the fact that the revised first regulatory test only applies to H-1B petitions filed after December 7, 2020, it should be recognized that the standard by which the Plaintiff was forced to comply with in the present matter has recently been deemed for all intents and purposes "arbitrary and capricious."

## B. *Educational Requirements for Proffered Position is "Common to the Industry"*

41.     The second criterion presents two alternative prongs, wherein Plaintiff may satisfy either prong to satisfy the second criterion. In the present matter, Plaintiff satisfied both prongs of

the second criterion. Plaintiff will analyze the first prong herein, and the second prong will be discussed later in this Complaint.

42.   The first prong requires that the Plaintiff establish that "the degree requirement of a bachelor's degree or higher in a specific specialty, or its equivalent, is common to the industry in parallel positions among similar organizations." *See* 8 CFR, §214.2(h)(4)(iii)(A)(2). In support of this criteria, Plaintiff submitted the following evidence: an attorney letter of support, which included an excerpt pulled from The International Federation of Operational Research of Societies ("IFORS") and a link to IFORS website.

43.   In Defendants RFE request to Plaintiff, Defendants provided a non-exhaustive list of evidence that Plaintiff may provide to establish eligibility under the first prong, one of which was: "letters from an industry-related professional association indicating that similar organizations routinely employ and recruit individuals with a bachelor's degree or higher in a specific specialty." *See* Exhibit "C".

44.   The IFORS is an umbrella organization for national operations research societies of more than 45 countries, including the United States. The IFORS was created in 1959 and its purpose is to establish "the development of operational research as a unified science and its advancement in all nations of the world." The IFORS website was created to promote the field of Operations Research, internationally and provide uniform standards for the field of Operations Research. IFORS is the leading professional association for the field of Operations Research. Accordingly, the information provided by IFORS should be considered with great significance.

45.   On the IFORS website, there is a "career" section. This section lists a multitude of jobs available for those in the field of Operations Research. As of the date of this Complaint, there are over five (5) pages of job listings on the IFORS website, each page listing twelve (12) jobs,

and all of which require a minimum of a bachelor's degree in operations research or a related field, and most of which require an advanced degree. In fact, on the IFORS website, it states that over 85% of operations research practitioners have postgraduate qualifications.

46.     It is abundantly clear that a position in operations research, commonly requires a minimum of a bachelor's degree in operations research or a related field. The position of an Operations Research Analyst requires specials skills that can only be obtained through a bachelor's degree in operations research or a related field, and usually requires an advanced degree in a related field.

### C. *Plaintiff Normally Requires Degree or Its Equivalent*

47.     Defendant USCIS erroneously stated that the Plaintiff's statement which outlined its requirements for the relevant position does not satisfy the third criterion alone and goes as far to say that "the critical element is not…an employer's self-imposed standards." However, an employer's self-imposed standards are ***exactly*** what the element requires. Pursuant to 8 CFR §214.2(h)(4)(iii)(A)(3) the petitioner [employer] must establish that "the employer [petitioner] normally requires a bachelor's degree or higher in a specific specialty, or its equivalent, for the position." It is undeniably clear that the primary focus of 8 CFR, §214.2(h)(4)(iii)(A)(3) is the specific job requirements that the Plaintiff normally requires for the position in question, in this case an Operations Research Analyst. Put in simpler terms, the entire premise of 8 CFR, §214.2(h)(4)(iii)(A)(3) is the employer's ***personal*** business practices.

48.     Defendants relied on *Defensor v. Meissner*, 201 F.3d 384 (5th Cir. 2000) when they improperly stated that the focus of the third criterion was ***not*** a petitioner's "self-imposed standards." However, Defendants severely misapplied the holding in *Defensor*. In *Defensor*, the petitioner was a third-party medical contract service agency, which placed foreign nurses into U.S.

hospitals who needed registered nurses. *Defensor,* 201 F.3d 384, 385. The Court in *Defensor* held that the petitioner's self-imposed requirement of only accepting nurses with B.S.N. degrees was not enough to satisfy the third regulatory test, as it could not show that the actual hospitals that the nurses would be placed in required a B.S.N. degree. *Id*. at 386. The petitioner's requirement of a B.S.N. degree was only in place because the facilities it had contracts with "preferred B.S.N. degrees," therefore, the actual employer where the nurse would be placed did not "require" B.S.N. degrees. *Id*. The Court reasoned that the primary focus of the third regulatory test was not what petitioner, as a third-party employment agency, required but instead what the contracting facility required. *Id*. The Court distinguished between a "token employer" who merely has the ability to "hire" or "pay" an employee and a "true employer" who can "hire, pay, fire, supervise, or otherwise control the work of any such employee." *Id*. at 388.

49.     The facts in *Defensor* vastly differ from those in the present matter. Specifically, Plaintiff, is not a third-party employment agency. Plaintiff would be the ***true employer*** of the beneficiary Gupta, meaning, Plaintiff would clearly fall under the definition of employer outlined in 8 CFR, § 214.2(h)(4)(ii)(2), as it would have the ability to "hire, pay, fire, supervise, or otherwise control the work of any such employee." The Court in *Defensor* made it clear that the primary focus of inquiry is what the "true employer" requires of its employees. See *Defensor,* 201 F.3d 384, 386.

50.     In this case, Plaintiff provided a "position description," which outlined the duties and educational requirements needed to obtain a job as an Operations Research Analyst, with Plaintiff. *See* Exhibit "A" and Exhibit "D". The position description provided by Plaintiff states that the applicant ***must*** have a minimum of a bachelor's degree, plus two years' experience or a master's in economics, Statistics, Mathematics, Supply Chain, Operations Management, or related

quantitative discipline for the position of Operations Research Analyst. *See* Exhibit "A" and Exhibit "D". Plaintiff in the present matter objectively satisfied the third criterion set forth in 8 CFR, §214.2(h)(4)(iii)(A)(3): that the employer normally requires a degree, or its equivalent, in a specific specialty for the position.

### C. *Criterion Two and Four–So Complex and Unique*

51.     As stated above, the second criterion presents two alternative prongs, wherein Plaintiff may satisfy either prong to satisfy the second criterion. In the present matter, and again as stated above, Plaintiff satisfied both prongs. Plaintiff provided an analysis of the first prong above and will now move to show how Plaintiff satisfied the second prong and the fourth criterion set forth under 8 CFR, §214.2(h)(4)(iii)(A).  The second prong of the second criterion, requires the "employer [Plaintiff] show that its particular position is so complex or unique that it can be performed only by an individual with a degree." *See* 8 CFR, §214.2(h)(4)(iii)(A)(2). Further, the fourth criterion requires that "the nature of the specific duties is so specialized and complex that the knowledge required to perform the duties is usually associated with the attainment of a baccalaureate degree or higher degree in a specific specialty." 8 CFR, §214.2(h)(4)(iii)(A)(4). The second prong of the second criterion and the fourth criterion under 8 CFR, §214.2(h)(4)(iii)(A) are similar and require a related analysis and substantiating evidence. For that reason, Plaintiff will analyze the two criteria together, providing any distinguishing analysis when necessary.

52.     As stated above, Defendants' decision must reflect that it "considered the pertinent evidence, examined the relevant factors, and ***articulated a satisfactory explanation for its action***." *Noroozi v. Napolitano*, No. 14 cv 2012 (PAE), 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012), citing *J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir. 2000) (emphasis added); *See also*, *Iaccarino v. Duke*, 327 F.Supp.3d 163, 177 (D. D.C. 2018) ("In evaluating agency actions under

the arbitrary and capricious standard, the court must be satisfied that the agency has 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action…').

53.   In the same spirit, this Court has held that "when an agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] ***must*** undo its action." See *Iaccarino*, 327 F. Supp. 3d at 177 (emphasis added) (citing *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999)); *See also, Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014). Put more simply, the agency, in this case USCIS, must explain why it acted as it did. The Court has held that this requirement serves two purposes: (1) to ensure that the agency has given careful consideration to the relevant request; and (2) to give the party an opportunity to inform the agency of any errors it may have made and to facilitate judicial review. *Butte Cnty. v. Hogen*, 613 F.3d 190, 201 (D.C. Cir. 2010).

54   To satisfy the second and fourth criterion, Petitioner submitted a two-page description of the position, which included not only a description of the job duties, but the percentages of time for each duty and the education Plaintiff completed related to each duty listed.

55.   Defendants concluded that the two-page document, which detailed exactly what each duty would entail and listed how the specific bachelor's and master's degrees obtained by Plaintiff are needed to sufficiently complete the respective duty/responsibility, was insufficient to satisfy the second or fourth regulatory test. However, Defendants failed to provide an appropriate explanation as to ***why*** the evidence submitted by Plaintiff was insufficient.

56.   Specifically, regarding the second criteria, Defendants explained stated the following:

> However, the job duties, as described, do not appear to be of such complexity or uniqueness as to require the attainment of a bachelor's degree in a specific specialty that consisted of theoretical and practical application of a body of highly specialized knowledge.

*See* <u>Exhibit "D"</u>.

Defendants simply restated (word for word) the second half of the definition for "specialty occupation" found in 8 U.S.C. §1184(i) and the second criterion set forth in 8 CFR, section 214.2(h)(4)(iii)(A), without providing ***any*** further explanation as to why the job position description Plaintiff provided, was insufficient. *See* <u>Exhibit "E"</u>.

57.     Regarding the fourth criteria, Defendants provided the following explanation:

While the proposed duties may include familiarity and experience with different technological platforms and/or applications, you have not described in ***sufficient detail*** how they are more specialized and complex than those of other Operations Research Analyst positions that are not usually associated with at least a bachelor's degree in a specific specialty, or its equivalent.

*See* <u>Exhibit "E"</u> (emphasis added).

58.     Defendants' overbroad statements provide no material explanation as to why the detailed two-page position description that Plaintiff submitted was insufficient to satisfy either the second or fourth criteria. This Court has made it clear that while the explanation need not be anything more than a "brief statement," the statement must explain ***why*** the agency chose to do what it did. *See Tourus v. Drug Enforcement Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001) (the court held that the statement "Affidavit of Indigency you submitted in lieu of a cost bond is not adequately supported" was not sufficient to explain why the agency made the decision it did, as the statement was conclusory and lacked any reasoning.) Like the agency in *Tourus*, the Defendants in the present matter merely provided Plaintiff with "conclusory statements" (such as "lacked sufficient detail") as to why Plaintiff failed to satisfy the second and fourth criteria. As such, the Defendants' denial of Plaintiff's I-129 undoubtedly constitutes an arbitrary and capricious action.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff prays this Court grants the following relief:

1. Accept jurisdiction over this action;

2. Reverse Defendant USCIS decision and grant Plaintiff's Form I-129, Petition for a Nonimmigrant Worker;

3. Grant reasonable attorneys' fees and costs as provided under the Equal Access to Justice Act and the APA; and

4. Grant such further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Sharadha Sankararaman Kodem*
Sharadha Sankararaman Kodem
Texas Bar No. 24090370
The Kodem Law Firm, PLLC
580 Decker Dr., Ste. 123
Irving, Texas 75062
Phone: 888-955-6634 ext. 101
Facsimile: 817-778-9980
sharadha.kodem@kodemlaw.com

Counsel for Plaintiff